## STATE Use of ANNA MEIDLING et al. *vs.* UNITED RAILWAYS AND ELECTRIC CO.

*Contributory Negligence—Attempt to Cross Tracks in Front of an Electric Car in Open Country Seen to be Approaching.*

The deceased drove slowly after dark towards the tracks of a suburban electric railway. The road lay through open fields, and the cars ran there at a high rate of speed. The view was unobstructed and the deceased saw the headlight of an approaching car but supposing that he could cross in time continued to drive on as before and a collision occurred which caused his death. There was evidence to the effect that a red light was displayed at the crossing which was a signal that the car should stop there before crossing the road and that this signal was disobeyed by the motorman who also neglected to sound the gong. *Held*, that the contributory negligence of the deceased in thus attempting to cross in front of a rapidly approaching car which he clearly saw was such as to bar recovery in this action to recover damages for his death, and that in the absence of any evidence that the deceased saw the red light and knew what it meant as a signal, it cannot be assumed that he was misled by it.

Appeal from Baltimore City Court (SHARP, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE and SCHMUCKER, JJ.

*William Colton* and *William S. Bryan, Jr.*, for the appellants.

*Fielder C. Slingluff* and *Geo. Dobbin Penniman*, for the appellee.

FOWLER, J., delivered the opinion of the Court.

This is an action to recover damages for the use of the widow and infant children of John Meidling who was fatally injured by one of the cars of the United Railways and Electric Company of Baltimore at the intersection of First avenue and Fifteenth street.

At the close of the plaintiff's testimony the Court at the instance of the defendant withdrew the case from the jury on the ground that by the undisputed evidence in the cause the negligence of the deceased directly contributed to the accident which caused his death. The single question presented by this appeal is whether there was error committed in giving the instruction just mentioned.

It appears from the evidence that the deceased together with a companion, Mrs. Plitts, was, on the evening of the 7th of February, 1901, after dark, between seven and eight o'clock, driving along First avenue which is a public thoroughfare. They were driving west approaching Baltimore and had reached Fifteenth street on which the tracks of the defendant company are laid. At this crossing the view in both directions on Fifteenth street is unobstructed and an approaching car could be seen by persons on First avenue before going upon the tracks of the railway. Indeed the evidence is clear and uncontradicted that both the deceased and his companion saw the car before attempting to cross. Mrs. Plitts testified as follows: "I saw the car; it looked like it was squares away; we could see it plainly, which we did see, and we had plenty of time to cross and we made no effort to hurry or anything else, because it was time enough to cross, because the car was over two squares off; he got up and looked out the sides of the wagon; it had no curtains on it; he raised himself and looked both ways and I looked myself."

It also appears from the evidence that the railroad on Fifteenth street was a T rail construction and that the way called Fifteenth street runs through the open fields and was not a thoroughfare. From the corner where the accident occurred there was a clear and unobstructed view for two blocks up Fifteenth street from whence the car was approaching and the headlight was burning full.

There were only two other witnesses who saw the accident and their testimony substantially agrees with that of Mrs. Plitts.

Can there be any doubt under the state of case here presented that the unfortunate man who was killed was guilty of

gross contributory negligence under the decision of this Court applicable to electric railroads in the open country. In *McNab v. United Rys. Co.*, 94 Md. 719, we said : "The construction out in the open country where this accident happened, is altogether different from that upon the streets where flat rails are used and where no cross ties are visible. The rate of speed at which cars are run in the country is from twenty to twenty-five miles an hour, whilst that permitted in the city is very much less. The danger of collision with a car is more imminent when crossing these tracks in the country than it is when driving over or along street railway tracks in a city." Again. "The conditions as to construction, location and speed and the danger incident to crossing the tracks being precisely the same in this instance as they would have been had the motive power been steam, the legal principles defining contributory negligence cannot be different merely because the motive power was electricity."

If we applied to the situation in the *McNab case* the rule which governs and defines the character of care which must be observed in approaching a steam railway it would seem to follow that the same rule is applicable here. The conditions are substantially similar. Here as there we have an electric railway running through the open country with a T rail construction. It is evident from all the evidence that we have here as there a rapidly approaching car in the sight of the traveller, who, in spite of the fact that he saw it, drove leisurely on the track and was run over and killed. It is conceded, of course, that the defendant was negligent in failing, perhaps, to give signals and in running at a higher rate of speed than was allowable, but under all the authorities such negligence of the defendant does not palliate or excuse the negligence of the plaintiff. Thus in *McNab's case* it is said : "No matter how negligent the company's servants may have been in failing to give signals or warnings of the approach of the car to the crossing, Mrs. McNab after she saw the danger of leaving a place of safety and of attempting to cross directly in front of the rapidly moving car, was, when she drove forward equally

guilty of negligence which immediately contributed to the infliction of the injury which she sustained ; and that contributory negligence is a bar to a recovery on her part."

The testimony is that when the deceased and his companion first saw the car it was from a-half block to two or three or several blocks or as Mrs. Plitts said, " squares away," and it does not appear that they again looked before attempting to cross.    This certainly, under the circumstances of this case was negligence.    It was held by the Supreme Court of Pennsylvania in *Keenan* v. *Union Traction Co.*, 202 Pa. 107; s. c., 58 L. R. A. 217; that it is contributory negligence when attempting to drive across the tracks of an electric railroad even in the country, where, at a distance of thirty-five feet from the track, one can look along the track 300 feet, and, seeing no car coming, walks his horse across the track without again looking for a car.    It was held to be his duty to continue to look until the track is reached.    In the course of the opinion Brown, J., said : " But his misfortune is that he was careful but for an instant, when he should have continued to be watchful until the track—the real point of danger—was reached.    If he had continued to look, he could have seen the car, just as those within saw his team 100 feet in front of it, when the horse was on or approaching the track.    It is not conceivable that the plaintiff could not have avoided the collision if he had continued to look."    Now if the injured person in the case just cited who did not see the car when he looked was guilty of negligence because he drove on the track without continuing to look, it seems to us for a still stronger reason must the deceased in this case be held negligent, for with his eyes open, and after seeing the car approaching he attempted to cross as described by the witnesses in a slow trot, without in the least hastening his speed.

The danger of adopting a rule which permits the traveller when he sees a car rapidly approaching, especially at night, to make a nice mathematical calculation as to whether he can with safety drive over the track before the car reaches the crossing is illustrated by the facts of this case.    One of the

witnesses thought the car was squares away and another only half a square distant as the deceased and Mrs. Plitts approached the crossing.    If the calculation made by the deceased had been correct he would doubtless have crossed in safety, but his calculation, as often happens, when calculations are made in the dark, was fatally erroneous.    The only safety *under such circumstances as we have in this case* is for the traveller to adhere to the rule which, as we have seen, was adopted by the Supreme Court of Pennsylvania in *Keenan* v. *Union Traction Co., supra,* rather than that which was advocated by counsel for appellants, which allows the traveller to make a rapid calculation in the dark and holds the railway company responsible for any damage resulting from errors committed by the calculator.

It was contended that the deceased had a right to suppose there was no danger in crossing because there was a signal at at First avenue which if obeyed by the employees of the defendant would have required the car to stop there.    But there is no evidence in the case that the deceased was misled by this light or that relying upon it he believed he could cross in safety.    Indeed there is no evidence that he saw the red light signal or knew what it meant.    Mrs. Plitts says there was a big red light at the crossing, but what it signified she did not know or if she knew she does not tell us.    We cannot assume that the deceased saw this red light and then assume that he knew what it signified and further assume that he was thereby misled and deceived.

From what we have said it will be seen that we entirely agree with the ruling of the learned Judge below in taking the case from the jury by reason of the contributory negligence of the deceased, John Meidling.

*Judgment affirmed.*

(Decided April 1st, 1903.)