CRAWFORD *v.* BALTIMORE TRANSIT CO.
[No. 132, October Term, 1947.]

382

*Decided April 22, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Roszel C. Thomsen,* with whom were *Wyatt & Jones*
and *Louis Silberstein* on the brief, for the appellant.

*Philip S. Ball* and *J. Nicholas Shriver, Jr.,* for the
appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment for the defendant
entered *n. o. v.* after a jury had rendered a verdict of
$15,000 in a third party action for injuries sustained by
the plaintiff when the truck he was driving was hit by a
street car at the intersection of Kennison and Belvedere
Avenues in Baltimore City. The issues concerning negli-
gence and contributory negligence require a detailed
statement of the evidence.

Kennison Avenue, a twelve foot highway, runs gen-
erally north and south. It is paved with asphalt, and
crosses the double tracks of the Transit Company on a
level but rather rough grade crossing. At about 3 P.M.
on October 20, 1945, the plaintiff was proceeding south
on Kennison Avenue. West of the intersection, Belve-
dere Avenue is about 22 feet in width from the north
curb to the tracks of the Transit Company, which are
of an open track, "T" rail construction occupying a space
some 15 feet in width south of the travelled portion of
the street. East of the intersection, Belvedere Avenue

is not open for vehicular traffic. The "T" rail construction extends to the east for a distance of some 200 feet where it crosses at grade the tracks of the Western Maryland Railroad, and thence to the Reisterstown Road. The street car in question was proceeding down a slight grade west from Reisterstown Road to the point where the tracks cross Kennison Avenue.

Crawford was driving a light delivery truck partially loaded with rugs. He was familiar with the crossing and knew it was dangerous. He testified "we call it a railroad crossing." As he approached the tracks he testified that he looked to his left after he passed a wooded area about 100 feet from the crossing. He looked again when he was about 25 feet from the tracks. At that point, as confirmed by photographs, there was nothing to obstruct his view except a small house adjacent to the Western Maryland tracks about 20 feet north of the northernmost trolley track, and about 200 feet from Kennison Avenue. The intervening space, an open lot, was partly overgrown with weeds. On the north side of the tracks there is a 6 foot walkway and the customary trolley poles supporting overhead wires. He testified that he saw no street car. He then looked to his right, shifted into low gear, and started across. When the front wheels were on the track he heard a noise, looked to his left and saw a street car about 40 feet away. He testified: "I can't give the speed in mileage, but I do know it was coming down fast, because they come down at an awful rate of speed, coming down there, I just got a flash look at him and the next minute it was over with." He tried to speed up, but the street car struck the truck behind the cab. The street car was derailed, but pushed the truck about 40 feet before coming to rest. Crawford stated that he was travelling at a rate of from 5 to 8 miles per hour when he drove on the tracks, and could have stopped "immediately".

The operator of the street car testified that he came to a dead stop at the Western Maryland tracks to let off

a passenger. There were "derailers" at that point which would have compelled him to stop in any event. He "drifted" across the railroad tracks and "picked up" to a rate of from 20 to 25 miles per hour. When he was about a car length (about 45 feet) from Kennison Avenue he saw the truck about 25 feet from the tracks coming at a fast rate of speed. He threw on the emergency brake but was unable to stop in time to avoid the collision. At 25 miles per hour he could make an emergency stop in about 80 to 90 feet. His version of the accident was substantiated by other witnesses, but for the purposes of this case we must accept the plaintiff's testimony, and all proper inferences to be drawn from it, as true.

The plaintiff offered in evidence an ordinance of Baltimore City (Ordinance No. 592, adopted in 1921, Baltimore City Code, Art. 39 § 69) : "When approaching and crossing any intersecting public highway or private street, the person operating a street car must have the same under control and must regulate the speed of said car according to what is reasonable and proper in view of the circumstances, surroundings and location; provided, however, that in crossing any such intersecting public highway or private street in the thickly congested or business parts of the city, such street car shall not be operated at a rate of speed exceeding fifteen miles an hour". The plaintiff conceded that the accident did not occur in a thickly congested or business part of the city, and that the fifteen mile proviso was inapplicable.

The jury was properly instructed that the ordinary rules as to right of way between motor vehicles did not apply. There was no objection to this portion of the charge. In *Caryl v. Baltimore Transit Co.*, 190 Md. 162, 58 A. 2d 239, and *Brown v. Bendix*, 187 Md. 613, 51 A. 2d 292, we pointed out that rights of way, created by the Motor Vehicle Code (Art. 66½) in 1943, had an important bearing upon the question of negligence and somewhat relaxed the strict rule of contributory negligence.

In the instant case, negligence could not be predicated upon any violation of that Act. But the appellant contends that the ordinance above quoted serves the same purpose. The ordinance, however, apart from the inapplicable proviso, does not create any preeminent right in favor of either party. Nor does it fix a speed limit. In the cases of *United R'ys. & Electric Co. v. Ward,* 113 Md. 649, 664, 77 A. 593, and *Barnes v. United R'ys. & Electric Co.,* 140 Md. 14, 17, 116 A. 855, relied upon by the appellant, the ordinance limited speed to 6 miles per hour everywhere within the city limits. In its present form the ordinance adds nothing to the reciprocal duty of due care imposed upon both parties. Liability of the appellee must be predicated upon a lack of due care under the circumstances, and not upon a violation of the ordinance.

There was no evidence that the motorman did not have his car under control, as in *Baltimore Transit Co. v. State, use Schriefer,* 184 Md. 250, 260, 40 A. 2d 678, nor was there any evidence of excessive speed except the testimony of Crawford that the street car was "coming down fast". It is difficult, if not impossible, "to judge the speed of an oncoming car". *Askin v. Long,* 176 Md. 545, 552, 6 A. 2d 246, 249. According to the undisputed testimony this car came to a full stop at the railroad crossing 200 feet away. It was not negligence *per se* for the motorman to accelerate his speed after crossing the railroad tracks. The company's "undertaking is to furnish 'rapid transit' ". *Charlton Bros. Transp. Co. v. Garrettson,* 188 Md. 85, 92, 51 A. 2d 642, 645. The motorman's conduct must be weighed in the light of the fact that this was not an ordinary street intersection, but a crossing similar in many respects to that of a railroad, as the plaintiff admitted in his testimony.

The appellant strongly contends that the rule which permits greater speed to street cars operating in the open country, as laid down in the cases of *Baltimore Transit Co. v. Lewis,* 174 Md. 618, 628, 199 A. 879; *Crystal v. Baltimore & Bel Air R'y. Co.,* 150 Md. 256, 263,

132 A. 629, and the cases there cited, has no application here. He argues that a different rule has been applied in suburban areas, notably in the *Ward* and *Barnes* cases, *supra*. While the scene of the accident in the instant case was not in the open country, the type of track construction both east and west of the crossing, and its location off the travelled portion of the highway, both permit greater speed between crossings and afford notice of danger to the travelling public. This court has clearly recognized that the so-called "open country" or "stop, look and listen" rule is applicable even within the City limits, when the tracks are separated from the travelled way. *Campbell and Sons v. United Railways & Electric Co.*, 160 Md. 647, 154 A. 552; *Crystal v. Baltimore & Bel Air R'y. Co., supra; Upton v. United R'ys. & Electric Co.*, 136 Md. 212, 110 A. 484; *Sparr v. United R'ys. & Electric Co.*, 114 Md. 316, 321, 79 A. 585.

We have already commented upon the fact that there was a different ordinance in the *Ward* and *Barnes* cases, *supra*, and that the appellant concedes that there was no fixed speed limit in the instant case. He argues, however, that since the street car was not seen by Crawford when he was 25 feet from the tracks, it must have traversed the 200 feet from the railroad tracks to Kennison Avenue while the plaintiff was travelling 25 feet during which time the truck must have been visible if the motorman was alert. The weakness of this argument is that the appellant did not see the street car when he said he looked, although it must have been in plain view, even if it was beyond and not nearer than the railroad tracks. Negative testimony of this sort is inherently improbable. *Baltimore Transit Co. v. Young*, 189 Md. 428, 56 A. 2d 140, 143; *Baltimore & O. R. Co. v. State, use Andrews*, 190 Md. 227, 58 A. 2d 243. It can hardly support an inference of speed on the part of an unseen object. Moreover, this calculation overlooks the fact that the street car came to a full stop at the railroad tracks,

and must have moved slowly over them before its speed could be accelerated.

Even if we assume, without deciding however, that there was some evidence of unreasonable or improper speed on the part of the street car, the appellant was clearly at fault in failing to look again before he ventured upon the tracks. "In thus looking too soon and too late to avoid the danger, the truck driver did not exercise the degree of care required by ordinary prudence." *Colgate & Co. v. United R'ys. & Electric Co.*, 156 Md. 472, 144 A. 519, 520. "It was not only his duty to look before starting to cross the intersection but to keep on looking until the track, the real point of danger, was reached." *National Hauling Contractors Co. v. Baltimore Transit Co.*, 185 Md. 158, 166, 44 A. 2d 450, 453. The case of *Davidson Transfer & Storage Co. v. Baltimore Transit*, 183 Md. 263, 37 A. 2d 326 (a non-jury case) is distinguishable both because the accident happened at an ordinary intersection, and because of testimony that the truck was actually on the tracks when the street car was 245 feet away. Compare *E. H. Koester Bakery Co. v. Poller*, 187 Md. 324, 50 A. 2d 234. What we said in the *Campbell* case, *supra*, 160 Md. at page 652, 154 A. at page 554, is apposite here: "Assuming that the motorman was negligent, his negligence must have concurred with that of the truck driver in causing the accident. Each was in plain sight of the other and each was proceeding on a course which, if continued, would probably result in a collision * * *, and ordinary care required each to proceed cautiously with the vehicle he was operating under control, until the intention of the other became apparent. The truck driver had no more right to assume that the motorman would yield the right of way, than the motorman had to assume that the truck driver would yield it. Nor can it be assumed that the motorman should have known that the truck would not stop before it reached the track over which the street car was running, any more than it can be assumed that the truck driver

should have known that the street car would not stop before the truck collided with it. The negligence of each was identical, and concurrent, and neither can be said to have had a 'last clear chance' to avoid the consequences of the negligence of the other * * *."

*Judgment affirmed, with costs.*