JOECKEL ET AL. *v.* THE BALTIMORE TRANSIT
COMPANY

[No. 72, October Term, 1955.]

*Decided January 10, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*John H. Skeen, Jr.*, with whom were *Skeen, Wilson & Coughlin* and *William A. Skeen* on the brief, for appellants.

*Charles B. Reeves, Jr.* and *J. Nicholas Shriver, Jr.*, with whom was *George P. Bowie* on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Harry Joeckel and Ethel M. Joeckel, his wife, from a judgment for costs, rendered in an action for damages, in favor of the Baltimore Transit Company, appellee.

The trial judge granted the prayer of the appellee to take the case from the jury on the grounds that Ethel M. Joeckel, hereinafter designated as the appellant, was guilty of contributory negligence as a matter of law, and that it was the duty of the appellant to continue

to look to the left before reaching and entering upon the streetcar tracks, which was the real point of danger. The appellant contends that the case should not have been withdrawn from the jury on the grounds that she was guilty of contributory negligence as a matter of law.

Of course, in deciding whether to take the case from the jury on contributory negligence of the plaintiff, appellant, as a matter of law, the trial judge should resolve all conflicts in the evidence in favor of the plaintiff, and should assume the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom which tend to support the plaintiff's right to recover. *Eisenhower v. Baltimore Transit Co.*, 190 Md. 528, 532, 59 A. 2d 313, and cases there cited. We will therefore recite the evidence in a light most favorable to the appellant.

On December 7, 1952, Mrs. Ethel M. Joeckel, appellant, 63 years of age and in good health, drove her husband to his work at Sparrows Point, Maryland, in a 1949, two-door sedan. She testified that about 2 P.M., the weather being clear, she let her husband out of the car at C and Third Streets in Sparrows Point. Accompanied by a Mrs. Richardson as a passenger, she proceeded on Third Street to F Street. She drove in an easterly direction on F Street, between fifteen and eighteen miles per hour, one block to its intersection with Fourth Street. There were no traffic controls or signs at this intersection. F Street runs east and west and Fourth Street north and south. She was a driver of long experience and knew that streetcars operated on Fourth Street. When she arrived at the intersection of F and Fourth Streets she brought her automobile to a full stop with the front bumper even with the curb line of Fourth Street. That street is thirty-four feet wide and carries north and south bound automobile traffic with north and south bound streetcar tracks in the center. The rails were imbedded in and level with the surface of the street. The westernmost rail of the south bound car tracks on Fourth Street was nine feet ten inches from the westernmost curb line of

Fourth Street. After appellant stopped, she looked to her left in a northerly direction on Fourth Street. At that point she could see at least two hundred feet to the north on Fourth Street, but she saw nothing. She could not see further on account of trees along the curb line. She saw nothing approaching from the left and started to cross Fourth Street. While shifting her gears and after traveling for three or four seconds she looked to her right. Immediately, and before appellant again looked to the left, Mrs. Richardson, the passenger, grabbed her arm and called out: "Do you see that streetcar?" At that time appellant's front wheels were practically on the westernmost rail of the north bound car tracks. The appellant immediately looked up and saw the south bound streetcar about eight feet away with the motorman on the front platform and two or three persons standing there with him. No bell rang or other warning signal was given by the motorman of the streetcar, which struck her automobile on the left side from the middle of the door back toward the rear. As a result of the collision the front truck of the streetcar was derailed to the left of the track and appellant's automobile was pushed forty feet south of the point of impact. "Bluish burnt marks" were observed on the rail forty-two feet northerly from the point of impact.

The preceding car stop on Fourth Street was more than five hundred feet north of the intersection with F Street. At that stop the operator of the streetcar had a clear view ahead down Fourth Street for more than five hundred feet south to F Street. There was a slight downward grade from that preceding car stop. Fourth Street leveled off prior to reaching F Street. Although there was a car stop at F Street, no one was getting off the streetcar there, and no one was waiting to board it at that point. The passengers were lined up waiting to leave the streetcar by the front door, at the car stop five hundred feet south of F Street.

In *Downey v. Baltimore Transit Company*, 197 Md. 245, 78 A. 2d 666, the driver of the taxicab was familiar

with the intersection. He testified that as he approached the intersection about four to nine feet from the building line, driving at from eighteen to twenty miles an hour, he first looked to his left. He could then see about one hundred feet up Ashland Avenue from which direction the streetcar came. At that time he was between thirty-five and forty feet from the streetcar track. He did not then see the streetcar. When he was a few feet from the track he saw a streetcar coming very fast. It was then too late for him to stop. The streetcar struck the left side of the cab. That case is so in point here that we quote at length the following: "We may assume, without deciding, as the trial court assumed, that there was some evidence of negligence on the part of the operator of the street car. Upon the plaintiff's own statement we think he was guilty of· contributory negligence as a matter of law. It is difficult to believe that the street car was not within the range of his vision when he first looked. But in any event, as has been said repeatedly, it was the duty of the plaintiff not only to look before starting across the intersection but to keep on looking until the track, the real point of danger, was reached. Had he done so he could have seen the street car in time to stop and avoid the collision. It was a plain case of looking too soon and too late. *Bearings Service Co. v. Baltimore Transit Co.,* 197 Md. 1, 77 A. 2d 779; *Rumbley v. Baltimore Transit Co.,* 194 Md. 164, 69 A. 2d 805; *Girton v. Baltimore Transit Co.,* 192 Md. 671, 65 A. 2d 329; *National Hauling Co. v. Baltimore Transit Co.,* 185 Md. 158, 44 A. 2d 450; *Colgate & Co. v. United Rys. & Electric Co.,* 156 Md. 472, 144 A. 519; *Schell v. United Rys. & Electric Co. of Baltimore,* 150 Md. 663, 133 A. 598; *Foos v. United Rys. & Electric Co. of Baltimore,* 136 Md. 540, 110 A. 849; *Heying v. United Rys. & Electric Co.,* 100 Md. 281, 59 A. 667. These cases all involved collisions between automobiles and street cars at comparable intersections in downtown Baltimore. The *Colgate* case in particular is strikingly similar on the facts. The same rule is applicable with even greater

force in outlying sections where the separation of the tracks from the travelled way permits greater speed between crossings. *Lewis v. Baltimore Transit Co.*, 193 Md. 366, 66 A. 2d 686; *Gross v. Baltimore Transit Co.*, 192 Md. 278, 64 A. 2d 147; *Crawford v. Baltimore Transit Co.*, 190 Md. 381, 58 A. 2d 680; *Meidling v. United Rys. & Electric Co.*, 97 Md. 73, 54 A. 612. The rationale of all these decisions is that the track must be regarded as a warning. The cases demonstrate that this rule is not affected by the fact that the right to use the city streets is reciprocal."

In the instant case the appellant was also familiar with the intersection. She looked to her left when she could see about two hundred feet up the track. Had she driven out beyond the row of trees, it is evident she could have seen at least five hundred feet up Fourth Street. *Foos v. United Rys. & Electric Co., supra.* Appellant's counsel stress the fact that at the point of observation she was only nine feet ten inches from the nearest rail of the track. She evidently had traveled half way across that track before she looked again and then only because Mrs. Richardson grabbed her arm and called. The cases do not emphasize the distance from the track that observation is required. It is the duty of the driver of the motor vehicle, not only to look before starting across the intersection, but to keep on looking until the track is reached. Instead of doing this, after starting across the intersection, appellant looked to her right but did not again look to her left. If, after looking to her right for automobile traffic, she had looked to her left again and kept on looking to her left as she crossed the intersection, the collision would not have occurred. We are of opinion that the trial judge was correct in finding the appellant guilty of contributory negligence as a matter of law

As to the last clear chance doctrine relied on by the appellant, that doctrine, of course, presupposes contributory negligence. For the doctrine of last clear chance to apply here, it was necessary that it be shown that the

defendant, appellee, could have observed or had reason to realize the danger created by plaintiff's, appellant's, negligence in time to have avoided the collision. *Maryland Central R. Co. v. Neubeur*, 62 Md. 391, 398; *Gross v. Baltimore Transit. Co., supra*; *Congressional Country Club v. Baltimore & Ohio R. Co.*, 194 Md. 533, 545, 71 A. 2d 696; *Baltimore Transit Co. v. Revere Copper & Brass Inc.*, 194 Md. 611, 72 A. 2d 4; *Domeski v. Atlantic Refining Co.*, 202 Md. 562, 97 A. 2d 313.

Here, the motorman, had he closely observed the appellant traveling the distance of nine feet ten inches to the track, would have had no reason to believe that she would not stop before driving on the track directly in front of the streetcar. The testimony of the appellant plainly shows that as she was crossing the track, and when she looked after Mrs. Richardson called to her, the streetcar was too close to have avoided the collision. Assuming that there was negligence on the part of the operator of the streetcar, such negligence was concurrent with that of the appellant. *Baltimore & Ohio R. Co. v. Leasure*, 193 Md. 523, 533, 69 A. 2d 248, 252; *Congressional Country Club v. Baltimore & Ohio R. Co., supra*; *O'Keefe v. Baltimore Transit Co.*, 201 Md. 345, 94 A. 2d 26; *Martin v. Sweeney*, 207 Md. 543, 114 A. 2d 825. The judgment will be affirmed.

*Judgment affirmed, with costs.*